PER CURIAM.
 

 This case is before the Court on appeal from an order denying a motion to vacate a judgment of conviction of first-degree murder and a sentence of death under Florida Rule of Criminal Procedure 3.851. Because the order concerns postconviction relief from a capital conviction for which a sentence of death was imposed, this Court has jurisdiction of the appeal under article V, section 3(b)(1), Florida Constitution.
 

 FACTS
 

 Teri Lynn Matthews’
 
 [1]
 
 body was discovered on December 5,1986, near the side of a road in rural Pasco County.
 
 Bolin v. State,
 
 869 So.2d 1196, 1198 (Fla.2004). Her wet body was wrapped in a sheet imprinted with a St. Joseph’s Hospital logo, and had multiple head injuries.
 
 Id.
 
 There was a single set of tire tracks leading to her body.
 
 Id.
 
 Matthews’ car keys were found near her body, but her car was found the next day parked at the Land O’Lakes Post Office.
 
 Id.
 
 Her purse was found untouched in her car and her mail was found scattered nearby on the ground.
 
 Id.
 

 Matthews’ murder remained unsolved until July 1990, when Danny Coby, of Indiana, telephoned “Crime Stoppers” and reported that he had received information from his wife, Cheryl Coby, regarding the murder of another of Bolin’s victims, Stephanie Collins. Following this call, the investigators interviewed Cheryl Coby about the Collins murder, which led them to question Philip Bolin about Matthews.
 

 Bolin was convicted and sentenced to death for Matthews’ murder in 1992, but that conviction was overturned by this Court because improper evidence was admitted at trial.
 
 Bolin v. State,
 
 650 So.2d 19 (Fla.1995) (concluding that the trial court erred in finding waiver of spousal privilege based on defendant’s deposition of ex-wife). On remand, Bolin was convicted and again sentenced to death, which this Court also overturned based on the abuse of discretion by the trial court for denying Bolin’s motion for individual voir dire of prospective jurors on the issue of pretrial publicity.
 
 Bolin v. State,
 
 736 So.2d 1160, 1161 (Fla.1999).
 

 At the third trial, Bolin’s half-brother, Phillip Bolin, testified that Bolin awakened him on the night of December 4, 1986, to help him move the body.
 
 Bolin,
 
 869 So.2d at 1198. Phillip Bolin testified that he saw a sheet-wrapped body and that Bolin told him that the girl was shot near the Land O’Lakes Post Office. Phillip testified that Bolin straddled the body and struck it several times with a metal-tipped wooden stick. Bolin then turned on a water hose and sprayed the body. Bolin was convicted and sentenced to death a third time.
 
 Id.
 
 at 1199. Bolin waived presentation of mitigation and waived having a jury advisory proceeding.
 
 Id.
 
 at 1199. After the trial court found that Bolin’s waiver was knowing, voluntary, and intelligent, the penalty phase proceeded without a jury. In an abundance of caution, the trial court
 
 *154
 
 followed Muhammad
 
 [2]
 
 guidelinés and found three aggravating factors,
 
 [3]
 
 one statutory mitigating factor,
 
 [4]
 
 and twelve non-statutory mitigating factors.
 
 [5]
 

 Bolin,
 
 869 So.2d at 1200. Bolin was sentenced to death.
 

 On direct appeal, Bolin raised five issues: (1) whether the trial court erred in denying Bolin’s challenges for cause, (2) whether the court abused its discretion by replacing juror Cox, who had chronic emphysema, with an alternate juror, (3) whether the court erred by allowing expert DNA testimony that there was a “match” in the bands of the semen and blood samples, (4) whether Bolin was entitled to a new trial because the record did not reflect whether the prospective jurors were sworn prior to voir dire, and (5) whether the court erred by accepting Bolin’s waiver of a penalty phase jury recommendation. Although not raised by Bolin, this Court also considered whether Bolin’s conviction was supported by sufficient evidence and whether Bolin’s sentence was proportionate. This Court affirmed Bolin’s conviction and sentence.
 

 Bolin filed his motion for postconviction relief on October 3, 2005. The court held an evidentiary hearing in several sessions beginning on November 16, 2006, and concluding on November 26, 2007. Bolin raised seven claims: five claims of ineffective assistance of counsel,
 
 [6]
 
 one claim of cumulative error, and one claim that his due process rights were violated when he was forced to file his motion prior to receiving documents requested from the Federal Bureau of Investigation. Bolin decided not to pursue the two claims relat
 
 *155
 
 ing to Michelle Steen, and the court denied the remaining claims. Bolin now appeals, raising two claims of ineffective assistance of counsel.
 

 ANALYSIS
 

 Following the United States Supreme Court’s decision in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
 

 First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
 

 Maxwell v. Wainwright,
 
 490 So.2d 927, 982 (Fla.1986) (citations omitted).
 

 Because both prongs of the
 
 Strickland
 
 test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the circuit court’s legal conclusions de novo.
 
 See Sochor v. State,
 
 883 So.2d 766, 771-72 (Fla.2004).
 

 There is a strong presumption that trial counsel’s performance was not ineffective.
 
 See Strickland,
 
 466 U.S. at 690, 104 S.Ct. 2052. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.”
 
 Id.
 
 at 689,104 S.Ct. 2052. The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’”
 
 Id.
 
 (quoting
 
 Michel v. Louisiana,
 
 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). “Judicial scrutiny of counsel’s performance must be highly deferential.”
 
 Id.
 
 In
 
 Occhicone v. State,
 
 768 So.2d 1037, 1048 (Fla.2000), this Court held that “strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.”
 

 Testimony of Danny Ferns
 

 First, Bolin alleges that trial counsel was ineffective for failing to object to the descriptive use of what appeared to be blood in Danny Ferns’ testimony. Below, the Sixth Circuit Court in and for Pasco County, Florida, denied Bolin’s first claim, stating:
 

 Although there may be other ways to say it, the witness probably could not accurately convey to the jury that the substance looked like blood without using the word blood. Had Ferns simply said that he saw a red substance, it would not have conveyed the essence of what he observed. An intelligent person with some degree of experience may testify as a lay witness to what they observe.
 
 See Jones v. State,
 
 440 So.2d 570 (Fla.1983), citing
 
 Peacock v. State,
 
 160 So.2d 541 (Fla. 1st DCA 1964). In this case, the witness testified that he observed blood.
 
 See
 
 Trial Transcript, pp. 874-875.
 

 
 *156
 
 Defendant’s objection to the testimony is partly that Ferns stated that he was sure it was blood, rather than it appeared to be, or looked like, blood.
 
 See
 
 November 16, 2006 Evidentiary Hearing Transcript, pp. 66-67. Even if counsel had objected, the testimony would not have been excluded. The State or defense counsel would simply elaborate on Ferns’ testimony by further establishing that he could not know to a scientific certainty that the substance was actually blood. There is little danger in this case that the jury was misled by the testimony to believe that the witness had scientifically tested the substance to determine that it was, in fact, actual human blood from the victim. The witness’ testimony revealed that he was approximately 13 years old and an elementary school student at the time of the murder.
 
 See
 
 Trial Transcript, pp. 871, 885. Moreover, the State elaborated on Danny Ferns’ testimony that he saw blood by questioning him as to whether he had ever seen blood before and whether he had any doubt that the substance appeared to be blood.
 
 See
 
 Trial Transcript, pp. 874-875.
 

 Mr. Swisher testified at the evidentia-ry hearing that he doesn’t recall whether or not he objected.
 
 See
 
 November 16, 2006 Evidentiary Hearing Transcript, pp. 68-70. Nor does he recall specifically why he would not have objected, but posited several tactical reasons why he might not have done so based on and depending on what other testimony followed that opinion.
 
 See id.
 
 During Defendant’s trial, Mr. Swisher attempted to show that the victim’s body was allegedly sprayed with a hose for several minutes and there was no blood visible on the ground at the time of the murder, yet Danny Ferns testified that he saw a three foot circle of blood on the ground several hours later when Phillip Bolin brought him home after school.
 
 See
 
 Trial Transcript, pp. 524, 778-780, 823-826, 882-885; November 16, 2006 Evidentiary Hearing Transcript, pp. 97-98.
 

 In this case, Mr. Swisher’s hypothesized tactical reasons why he may not object coincide with what occurred at trial. An attorney’s decisions regarding trial tactics are not subject to attack in a motion for post conviction relief.
 
 See Buford v. State,
 
 492 So.2d 355 (Fla. 1986). Furthermore, the testimony would not have been excluded even if counsel had objected. An objection would only result in a clarification that the witness could not be certain the substance was actually blood. Between the State’s attempted clarification regarding Danny Ferns’ knowledge of blood and the testimony that Ferns was a 13 year old elementary student at the time of the murder, there is sufficient clarification that the witness was testifying as to what he observed and not that he was testifying as to any scientific certainty that the substance was blood. This claim is denied accordingly.
 

 We agree.
 

 At trial, Danny Ferns testified that in early December 1986, he and Phillip Bolin were best friends and attended the same elementary school, and that Phillip had told him something unusual at the bus stop one morning. Ferns agreed to go back to Valencia Drive with Phillip. In response to counsel’s question asking him to explain what he saw on the ground once there, Ferns testified that he saw “[a] lot of blood and stuff on the grass. And the grass was kind of — I don’t know.” This exchange continued:
 

 Q. Well, let me ask you this. Back in '86, had you ever seen blood before?
 

 A. Yes, sir.
 

 
 *157
 
 Q. Did you know what color blood was?
 

 A. Yes, sir.
 

 Q. Did you feel comfortable enough that when you looked down on the grass that you could tell in your own mind that
 
 appeared to be blood?
 

 A. Absolutely.
 

 Q. Was there any doubt in your mind when you looked on that grass that
 
 that appeared to be blood?
 

 A. No doubt. I knew it was.
 

 (Emphasis added.) Accordingly, on direct examination, it was Ferns’ testimony that he saw what appeared to be blood on the grass and that in his mind there was no doubt what he saw. It is not likely that the jury was confused or believed that a thirteen-year-old boy had tested the substance he saw on the ground. Nor is it likely that Ferns could have conveyed what he saw without using the word blood.
 

 Section 90.701, Florida Statutes provides:
 

 If a witness is not testifying as an expert, the witness’s testimony about what he or she perceived may be in the form of inference and opinion when:
 

 (1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness’s use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
 

 (2) The opinions and inferences do not require a special knowledge, skill, experience, or training.
 

 § 90.701, Fla. Stat. (2001). Here, Ferns could have testified that he saw a red substance on the ground, but that would not have conveyed with equal accuracy that he saw what appeared to be blood. Likewise, there is not a readily apparent set of words that would equally convey that what Ferns saw appeared, to him, to be blood. Additionally, because Ferns’ testimony was that what he saw “appeared” to be blood, it is not likely that he misled the jury to Bolin’s prejudice. As we noted in
 
 Gardner v. State,
 
 480 So.2d 91 (Fla.1985), “A lay witness may give opinion testimony so long as the opinion testimony does not mislead the trier of fact.”
 
 Id.
 
 at 93 (finding proper a police officer’s opinion testimony as a lay witness regarding a codefendant’s character based on hours of observation).
 

 In
 
 Gantling v. State,
 
 40 Fla. 237, 23 So. 857 (1898), we held that it was not improper for a witness to testify regarding the color of stains on a garment and their relationship to blood.
 
 Id.
 
 at 860. Specifically, after the trial court sustained a defense objection to the witness’s testimony “that he saw splotches or stains of some kind ..., which he supposed was blood; he felt confident that it was blood[,]” the witness rephrased his testimony, stating that he was not an expert and “that the stains were of a yellow or reddish color; they had been there so long that they were not the color of blood.”
 
 Id. We
 
 held that such testimony was not improper and that the trial court properly overruled the objection to it, stating, “It requires no expert knowledge to enable one to know that there are stains upon clothing, nor their color, where they are visible to the eye. These are matters open to common knowledge and common observation.”
 
 Id.
 
 Bolin now suggests that
 
 Gantling
 
 stands for the proposition that a witness may not opine that a stain is blood.
 
 Gantling
 
 makes no such holding. Nothing in
 
 Gantling
 
 supports Bolin’s assertion that Ferns’ testimony was improper or that defense counsel was ineffective for failing to object to it.
 

 Bolin also raises
 
 Floyd v. State,
 
 569 So.2d 1225 (Fla.1990), in support of his argument. In
 
 Floyd,
 
 a police officer testi
 
 *158
 
 fied “that a tablecloth found lying on the bed ‘appeared like someone had taken some type of object that had blood on it and wiped it on there and left it on the bed.’ ”
 
 Id.
 
 at 1281. We upheld the testimony as proper and “within the permissible range of lay observation and ordinary police experience.”
 
 Id.
 
 at 1232.
 

 Additionally, there are cases where lay witnesses have mentioned blood in their testimonies that have been upheld by this Court and the district courts of appeal.
 
 See Smith v. State, 1
 
 So.3d 473, 489 (Fla. 2009) (witness testified that he helped to clean up blood after he witnessed a shooting);
 
 Thorp v. State, 111
 
 So.2d 385, 388 (Fla.2000) (an employee of the mission where defendant was staying testified that he saw Thorp with blood on his shirt); Davis
 
 v. State,
 
 586 So.2d 1038, 1040 (Fla. 1991) (witness testified that she discovered the victim lying in pool of blood),
 
 vacated on other grounds,
 
 505 U.S. 1216, 112 S.Ct. 3021, 120 L.Ed.2d 893 (1992) (vacated and remanded for consideration in light of
 
 Espinosa v. Florida,
 
 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992));
 
 Moody v. State,
 
 418 So.2d 989, 991 (Fla.1982) (a witness who had been living with Moody in a Volkswagen saw a puddle of blood on the victim’s floor);
 
 King v. State,
 
 390 So.2d 315, 317 (Fla.1980) (a counselor at the facility where King was incarcerated saw that the crotch of King’s pants was covered in blood),
 
 receded from on other grounds by, Strickland v. State,
 
 437 So.2d 150 (Fla.1983);
 
 Bartlett v. State,
 
 993 So.2d 157,159 (Fla. 1st DCA 2008) (witness testified to there being a substance that appeared to be blood on one of two knives). Additionally, in
 
 Rose v. State,
 
 617 So.2d 291 (Fla.1993), the defendant raised a similar issue on postconviction alleging that trial counsel was ineffective for failing to object to the testimony of two witnesses, neighbors of Rose who had given him a ride home the night of the murder and testified that he had blood on his person.
 
 Id.
 
 at 296;
 
 Rose v. State,
 
 774 So.2d 629, 632-33 (Fla.2000),
 
 receded from on other grounds by, Guzman v. State,
 
 868 So.2d 498 (Fla.2003). We upheld the court’s denial of Rose’s postconviction motion and did not find counsel deficient.
 
 Rose,
 
 617 So.2d at 296-97.
 

 Defense counsel, Swisher, testified that although he could not remember the exact reason he chose not to object to Ferns’ testimony, it was possible that he was attempting to discredit that there was ever anything on the ground for Ferns to identify. Swisher’s theory of the case, that the hose used to wash off Matthews’ body that left her and the grass wet would have also washed away any blood, was not unreasonable. Further, because Phillip Bolin’s testimony was not improper, it is likely that any objection would have been overruled. Accordingly, we do not find Swisher’s performance deficient.
 

 Moreover, even if we found that Swisher was deficient, Bolin has not established prejudice sufficient to undermine confidence in the outcome of his trial. Ferns’ testimony corroborated that of Phillip Bo-lin. Phillip testified that he witnessed Bo-lin strike Matthews with a metal-tipped stick matching the description of one given to him by his employer. Both boys’ testimony that the ground was wet was corroborated by the physical evidence that Matthews was found wet although it had not rained recently. Additionally, a semen sample found on the victim matched Bo-lin’s blood sample. Furthermore, it is not likely that the jury was misled by Ferns’ testimony. Accordingly, this claim is denied.
 

 Failure to Call Oscar Ray Bolin, Sr.
 

 Second, Bolin alleges that counsel was ineffective for failing to call his father, Oscar Ray Bolin, Sr., to testify in order to
 
 *159
 
 rebut Ferns’ testimony. The circuit court denied Bolin’s second claim, stating:
 

 The testimony referred to in this claim is, once again, Danny Ferns’ testimony that he saw blood on the ground at the scene of the murder. Defendant claims that trial counsel failed to investigate and call as a witness Oscar Ray Bolin, Senior, who was present and available to testify. Bolin Senior would have testified that he was a carnival worker, and that he sprayed [sic] painted several items used in his carnival concession in the area where Ferns saw what he believed to be blood, but was actually red spray paint. Bolin Senior would also have testified that there were no hoses remaining on the family property on Valencia Drive, as he took all hoses with him in his travels with the carnival.
 

 Mr. Swisher testified that he spoke to Bolin Senior, but that he made a tactical decision not to call him as a witness for several reasons. First, there is the fact that Bolin Senior was out of state for the two weeks prior to the murder and any spray painting would have been done prior to his departure.
 
 See
 
 Trial Transcript, p. 1472. Second, there was no way to independently corroborate Bolin Senior’s testimony 15 years after the murder.
 
 See
 
 November 16, 2006 Evidentiary Hearing Transcript, pp. 75-76, 99-101. Third, there is the perceived bias on the part of a father testifying for his son.
 
 See id.
 
 at 76. Fourth, counsel did not want to risk his being discredited in the guilt phase if he needed him to testify in the penalty phase.
 
 See id.
 
 at 103, 106-107. And fifth, Bolin Senior was not a good witness.
 
 See id.
 
 at 75-77. Not only did counsel believe so based on his own interview with Bolin Senior, but he testified that both Defendant and his wife, Rosalie Bolin, told him that Bolin Senior would not be a good witness.
 
 See id.
 

 Furthermore, the information about the spray painting of carnival equipment and the removal of all hoses from the property was presented to the jury in the testimony of Gertrude Bolin, Defendant’s stepmother.
 
 See
 
 Trial Transcript, pp. 1470; November 16, 2006 Ev-identiary Hearing Transcript, p. 74-76. Whether the decision not to call Bolin Senior as a witness was the best tactical decision is not at issue in this proceeding. As long as an attorney has considered and rejected alternative courses of action, tactical or strategic choices do not constitute deficient conduct on the part of the attorney.
 
 See Henry v. State,
 
 948 So.2d 609 (Fla.2006). The decision not to call Bolin Senior was a tactical decision made by counsel, and it was made with the agreement of Defendant. Based on the foregoing, the Court finds that counsel was not deficient, and the claim is denied accordingly.
 

 We agree.
 

 Here, both Bolin and his wife, Rosalie, told trial counsel that Bolin, Sr. would not be a good witness. Swisher confirmed this independently, and determined that Bolin, Sr. would not be a good witness.
 

 We have previously found that trial counsel is not ineffective where counsel decides not to present a witness with questionable credibility.
 
 See Evans v. State,
 
 995 So.2d 933, 943 (Fla.2008) (trial counsel’s tactical decision not to present witnesses with questionable credibility does not constitute ineffective assistance); Lamarca
 
 v. State,
 
 931 So.2d 838, 848-49 (Fla. 2006) (reasonable trial strategy for counsel not to call people who were not credible and would not have made good defense witnesses);
 
 Marquard v. State,
 
 850 So.2d 417, 427 (Fla.2002) (denying ineffective assistance claim for failing to call witness when counsel believed the witness would not exonerate the defendant).
 

 
 *160
 
 In
 
 Evans,
 
 the defendant raised ineffective assistance of counsel because trial counsel failed to call witnesses Evans alleged could have contradicted the State’s timing of the murder.
 
 Evans,
 
 995 So.2d at 943. At the evidentiary hearing, one of the witnesses testified that they had all been drunk the evening of the murder but he believed that the shots occurred between 9:30 and 10:00 p.m.
 
 Id.
 
 The witness also stated that he had injured his neck in an accident after the crime but before the trial and had experienced memory lapses since then.
 
 Id.
 
 We ruled that counsel was not ineffective for not calling the witnesses because both had questionable credibility.
 
 Id.
 
 Likewise, in the present case, Swisher was concerned about Bolin, Sr.’s credibility after being informed by both Bolin and Rosalie that he would not be a good witness. This concern, coupled with Bolin, Sr.’s relationship as Bolin’s father, led Swisher to make the tactical decision to reserve Bolin, Sr.’s limited credibility for the penalty phase. We do not find this decision to be unreasonable.
 

 Similarly, in
 
 Lamarca,
 
 we found it a reasonable trial strategy to avoid calling witnesses believed to have questionable credibility.
 
 Lamarca,
 
 931 So.2d at 848-49. Although the credibility issues presented in
 
 Lamarca
 
 — significant prison record, hearing difficulties, inconsistent and contradictory statements, and drunkenness-are distinguishable from the present case, Swisher’s decision was nevertheless reasonable. Swisher testified that he was concerned that using a mother, father, and wife to support the defense would improperly shift the jury’s focus to the defense’s credibility. There was no other evidence to corroborate the testimony that Bolin, Sr. would have provided, and his testimony would have contradicted Swisher’s theory of the case that Ferns could not have seen any substance on the ground. This was a reasonable tactical decision.
 

 In
 
 Marquard,
 
 this Court found no ineffective assistance where counsel chose not to call witnesses who would not have exonerated the defendant.
 
 Marquard,
 
 850 So.2d at 427. Despite Marquard’s assertions, the potential witnesses would have confirmed his participation in the crime. In the present case, it is not likely that Bolin, Sr. would have exonerated Bohn. His testimony could not be corroborated and would not establish definitively that Bolin could not have committed the crime. As stated above, Ferns’ testimony was corroborated by Phillip Bolin. Even if Bolin, Sr. had testified that there could have been spray paint on the ground, it was not likely to discredit Ferns’ version of events.
 

 Additionally, Bolin cannot establish that the outcome of the trial would have been different had Bolin, Sr. testified. Bolin, Sr. would have testified that he spray painted equipment using many colors, including red, approximately three weeks prior to Matthews’ murder. It is not likely the spray paint would have remained on the grass, or that — if it had — Ferns would have mistaken the mixture of paint colors as blood. Further, it is not likely that the jury would have believed Ferns mistook weeks-old spray paint for blood. Because Bolin has failed to demonstrate that counsel was deficient or that he was prejudiced, this claim is denied.
 

 Accordingly, we affirm the Sixth Circuit’s denial of Bolin’s motion for postcon-viction relief.
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, LEWIS, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 QUINCE, J., recused.
 

 [1]
 

 . The victim's name has not been spelled consistently in the parties’ briefs, lower court's orders, and opinions of this Court — it is spelled either Mathews or Matthews. The original indictment spells the victim’s name Matthews, as do newspaper reports detailing the trials. Accordingly, this opinion will refer to the victim with the spelling Matthews.
 

 [2]
 

 .
 
 Muhammad v. State,
 
 782 So.2d 343, 363-64 (Fla.2001) (requiring preparation of a presen-tence investigation (PSI) in every case where the defendant is not challenging the imposition of the death penalty and refuses to present mitigation evidence to assist the trial court in considering all available mitigation).
 

 [3]
 

 . The aggravating factors found by the trial court were: (1) Bolin was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person (great weight); (2) the capital felony was committed while Bolin was engaged in the kidnapping of the victim from the post office or defendant intended to commit a sexual battery (great weight); and (3) the capital felony was heinous, atrocious, or cruel (great weight).
 

 [4]
 

 . The court found the statutory mitigator that the capacity of Bolin to appreciate the criminality of his conduct was substantially impaired because of brain damage, but the court gave this mitigator little weight.
 

 [5]
 

 . The court found the following nonstatutory mitigators: (1) Bolin had a somewhat difficult childhood (some weight); (2) he had a sporadic and minimal educational experience (little weight); (3) he received improper care during childhood (little weight); (4) he was under stress at the time of the murder because of his wife being pregnant and frequently ill (slight weight); (5) Bolin was twenty-four years of age at the time he committed the murder; (6) he was respectful to other parties in this case (little weight); (7) he saved another life by rescuing a drowning person (some weight); (8) he was employed at the time of the offense (slight weight); (9) he received no adverse disciplinary reports from prison (some weight); (10) he had used alcohol and drugs as a minor, but did not have a dependency problem (slight weight); (11) he had some evidence of minor brain damage or mental illness (little weight); and (12) he had a medical history that included multiple suicide attempts (slight weight).
 

 [6]
 

 .Bolin claimed: (1) counsel was ineffective for failing to object to the testimony of Danny Ferns, (2) counsel was ineffective for failing to call a witness who would have rebutted the testimony of Danny Ferns — to wit, Oscar Ray Bolin, Sr., (3) counsel was ineffective for failing to impeach Michelle Steen, (4) counsel was ineffective for failing to impeach Michelle Steen by calling a witness who would have testified that Steen had previously admitted her testimony that Bolin confessed was false, and (5) counsel was ineffective for misadvis-ing Bolin to waive his right to testify.