# Supreme Court of Florida

_____

No. SC13-2169
_____

**MARK A. TWILEGAR,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[May 28, 2015]

PER CURIAM.

This case is before the Court on appeal from an order denying a motion to vacate a judgment of conviction of first-degree murder and a sentence of death under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the following reasons, we affirm.

## STATEMENT OF THE CASE AND FACTS

The facts were summarized by this Court in Twilegar v. State, 42 So. 3d 177 (Fla. 2010), as follows:

> On April 3, 2003, Mark Twilegar was charged with first-degree murder, either by premeditated design or in the course of a robbery, for the shooting death of David Thomas in Fort Myers on August 7, 2002. The evidence presented at trial showed that Twilegar came to

Fort Myers from Missouri in the spring of 2002 and lived for a couple of weeks with his niece, Jennifer Morrison, who rented a residence from the victim, David Thomas, and his wife, Mary Ann Lehman. Twilegar's mother arrived a few weeks later and also moved in with Morrison. After several weeks, Twilegar moved out and eventually pitched a three-room tent in an undeveloped area adjacent to the backyard of a house at 412 Miramar Road, which was occupied by Britany and Shane McArthur. Twilegar did not own a car and did not have a regular job. In lieu of paying rent, he worked as a handyman on the premises. His possessions included a couch, a TV, some clothes and a twelve-gauge shotgun, which he kept in the tent. The McArthurs moved out of the house in June 2002, and Britany's younger brother, Spencer, moved into the house in September. Prior to moving in, Spencer stopped by the house on a regular basis to perform renovations, as discussed below.

On occasion, Twilegar worked as a handyman for the victim, David Thomas, and on August 2, 2002, the two drove in Thomas's pickup truck to Montgomery, Alabama, where Twilegar had agreed to install a deck on a house Thomas owned there. Thomas told his wife that he would be gone six to eight weeks. On the morning of August 6, 2002, Thomas withdrew $25,000 in cash from a bank in Montgomery, ostensibly to purchase a house at an auction, and then later that same morning he rented a Dodge Neon, arranging to return the car in Montgomery on August 9, 2002. Thomas called his girlfriend, Valerie Bisnett Fabina, in Fort Myers and told her that he and Twilegar would be returning to Fort Myers that night. Thomas's neighbor last saw Thomas and Twilegar at the Montgomery house at approximately 3 p.m. that afternoon. Thomas and Twilegar then returned to Fort Myers, where Thomas met with Fabina at approximately 11 p.m. and obtained a motel room key card from her. At the meeting, Fabina observed Twilegar sitting in the passenger seat of the Neon.

The next evening, August 7, 2002, Thomas visited Fabina at her job at 7 or 7:30 p.m. and returned the motel key card. When he opened his wallet to remove the key card, Fabina noticed that he had an unusually large amount of cash. Thomas told her that he and Twilegar were going to go look at a truck to buy for Twilegar to use on the job in Alabama, and that he would meet her later that night at the motel. Fabina never saw or heard from him again. Thomas spoke with his wife, Mary Ann Lehman, by phone a little after 9 p.m. that

evening, and they made arrangements to speak again in the morning. She never saw or heard from him again.  Later that night, Twilegar, alone, arrived at Jennifer Morrison's house, where Twilegar's mother was staying.  Morrison then drove Twilegar to 7–Eleven where he purchased cell-phones and supplies.  She also drove him to [Walmart] where he made additional purchases.  When they arrived back at the house, Morrison went to bed.  When she woke the next morning, Twilegar and his mother and their possessions were gone.  Morrison would never see Twilegar in Fort Myers again.

After Britany and Shane moved out of the Miramar house in June but before Spencer moved into the house in September, Spencer arrived at the house one day at 4 p.m. to perform renovations and he saw Twilegar digging in the backyard on the far side of his tent. Spencer watched him briefly, unobserved, then returned to the front of the house.  A few minutes later, Twilegar approached him and explained that a man would be stopping by to deliver a couple of pounds of "weed" and that the man would not stop if he saw Spencer there.  Twilegar asked him to leave the premises and told him that if he did he would give him either $100 or an ounce of weed.  Spencer left, and when he returned the next day, he found a $100 bill in the prearranged spot.  He also found Twilegar's tent disassembled and smoldering in the backyard incinerator.  Most of Twilegar's possessions were gone, including the shotgun.  Spencer would never see Twilegar in Fort Myers again.  On September 26, 2002, after Thomas's disappearance was publicized, Spencer went to the spot where Twilegar had been digging and found that the area was covered by Twilegar's couch.  He moved the couch aside and found an area of freshly dug dirt, covered with palm fronds.  Beneath the palm fronds was a piece of plywood, and beneath that a couple of cinder blocks and a car ramp.  After digging several feet, he detected a strong odor. Police were called and they discovered Thomas's body.

Thomas died from a single shotgun blast to his upper right back, delivered at close range.  The 7 1/2 birdshot, from a twelve-gauge shell, had travelled through his body at a downward trajectory. He had died within minutes of being shot.  Soft fine sand, similar to that which covered the exterior of his body, was found deep inside his throat, in his larynx, indicating that he had still been breathing, though not necessarily conscious, when buried.  He was still wearing the same clothes he had been wearing when Fabina last saw him on August 7, 2002, but his wallet was missing.  His body was badly

decomposed, and the time of death was uncertain. A spent twelve-gauge shell was found in the incinerator, along with a broken D-shaped garden tool handle. Twilegar's shotgun was never found. Several live twelve-gauge shells were found discarded in the area, along with a shovel with a broken handle. Thomas's rental car key fob was found approximately 100 feet from the body. The rental car was found earlier, on August 13, 2002, burned in a remote area of Lee County. Twilegar was apprehended September 20, 2002, in Greenville, Tennessee, where he had been staying at a campground since August 21, 2002. Among the property seized at the campground were numerous retail receipts totaling thousands of dollars for camping supplies and other items purchased after Twilegar had left Fort Myers. The merchandise was all purchased with cash. While awaiting trial, Twilegar made several incriminating phone calls, which were recorded.

Twilegar's trial began January 16, 2007, and he testified in the guilt phase. He stated that the "weed" incident had in fact occurred but that it had happened before he left for Alabama with Thomas, not after he returned. He said that he had often dug holes near his tent for latrine purposes. He also testified that he had returned from Alabama not with Thomas on August 6, 2002, but alone on August 5, 2002, in a car Thomas had given him as partial payment for the deck work he was doing, and that he had later sold the car to an itinerant in Palm Beach. He testified that during the early morning hours of August 8, 2002, after shopping at 7–Eleven and [Walmart], he had driven his mother's car, which was already packed with their possessions, back to his tent to get his shaving kit and that someone had pointed a shotgun at him in the dark and that he had deflected the shot, injuring his hand. He kicked the assailant and ran away.

After closing arguments, the jury deliberated for little more than an hour and on January 26, 2007, returned a verdict finding Twilegar guilty of first-degree premeditated murder. Twilegar waived a penalty phase jury and waived both the investigation and the presentation of mitigation. The penalty phase proceeding was held before the judge on February 16, 2007, and the State presented argument in aggravation, while the defense stood mute. The Spencer [v. State, 615 So. 2d 688, 690-91 (Fla. 1993),] hearing was held February 19, 2007. On August 14, 2007, the court sentenced Twilegar to death, based on two aggravating circumstances, no statutory mitigating circumstances, and four nonstatutory mitigating circumstances.

- 4 -

Twilegar, 42 So. 3d at 185-88 (footnotes omitted).  On appeal to this Court,

Twilegar raised nine issues.[1]  Id. at 188.  We concluded that, with one exception,

"Twilegar has failed to show that the trial court erred with respect to [his] claims."

Id. at 204.  We further found that while the trial court erred in initially admitting

receipts for retail purchases without first requiring the State to establish a sufficient

foundation, the error was harmless.  Id.  Accordingly, we affirmed Twilegar's

conviction and sentence of death.  Id.

Twilegar filed his initial Motion to Vacate Judgment of Conviction and

Sentences with Special Request for Leave to Amend pursuant to Florida Rule of

Criminal Procedure 3.851 on February 7, 2012, which he amended on September

27, 2012.  The circuit court held a case management conference on October 26,

2012, and issued an order setting an evidentiary hearing on one claim and

summarily denying the remaining claims.  Thereafter, the circuit court held an

---

1. The issues Twilegar raised on direct appeal were: (1) sufficiency of the evidence to prove that Twilegar committed the crime, (2) sufficiency of the evidence to prove premeditation, (3) whether the trial court erred in denying Twilegar's motion to suppress, (4) whether the trial court erred in excluding evidence, (5) whether the trial court erred in admitting evidence of flight, (6) whether the trial court erred in admitting Twilegar's jailhouse phone calls, (7) whether the trial court erred in admitting Twilegar's receipts for retail purchases, (8) whether the trial court erred in finding pecuniary gain and CCP as aggravators and proportionality, and (9) whether the trial court erred in allowing Twilegar to waive a penalty phase jury and waive mitigation.  Twilegar, 42 So. 3d at 188 n.4.

evidentiary hearing on July 15-16, 2013. At the conclusion of the hearing, the circuit court issued an order denying Twilegar's postconviction motion.

Twilegar now appeals, raising four issues: (1) ineffective assistance of trial counsel during the guilt phase, (2) public records access, (3) juror misconduct, and (4) ineffective assistance of trial counsel during jury selection.

## ANALYSIS

First, regarding the circuit court's summary denial of Twilegar's third and fourth claims on appeal, we review de novo. See Davis v. State, 142 So. 3d 867, 875 (Fla.), cert. denied, 135 S. Ct. 15 (2014). The summary denial of a postconviction claim will be upheld if the motion is legally insufficient or its allegations are conclusively refuted by the record. Id. After a review of the pleadings and record, we find that the circuit court properly summarily denied these claims. Accordingly, we limit our discussion to Twilegar's claims of ineffective assistance of counsel during the guilt phase and his access to public records.

## Ineffective Assistance of Counsel

The sole issue for which the circuit court granted an evidentiary hearing was Twilegar's allegation of three instances of ineffective assistance of trial counsel. In accordance with Strickland v. Washington, 466 U.S. 668 (1984), we employ the following standard of review:

- 6 -

First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.

Long v. State, 118 So. 3d 798, 805 (Fla. 2013) (quoting Bolin v. State, 41 So. 3d 151, 155 (Fla. 2010)). Additionally:

There is a strong presumption that trial counsel's performance was not deficient. See Strickland, 466 U.S. at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "Judicial scrutiny of counsel's performance must be highly deferential." Id. "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000). Furthermore, where this Court previously has rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to make a meritless argument. Melendez v. State, 612 So. 2d 1366, 1369 (Fla. 1992).

In demonstrating prejudice, the defendant must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Long, 118 So. 2d at 805-06 (parallel citations omitted).

Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by

- 7 -

competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo.

Shellito v. State, 121 So. 3d 445, 451 (Fla. 2013) (citing Mungin v. State, 79 So. 3d 726, 737 (Fla. 2011); Sochor v. State, 883 So. 2d 766, 771-72 (Fla. 2004)).

First, Twilegar alleges trial counsel was ineffective for failing to adequately challenge the State's forensic evidence by bringing in experts for the defense or more thoroughly cross-examining the medical examiner. At the evidentiary hearing, Twilegar presented testimony from experts who opined that the medical examiner's autopsy was deficient. Twilegar argues that trial counsel should have presented evidence of this type during his trial either through cross-examination or by calling expert witnesses on behalf of the defense. The circuit court found that counsel's performance was not deficient. Additionally, the circuit court found that Twilegar did not establish prejudice. Competent, substantial evidence supports the circuit court's determination.

At trial, the medical examiner, Dr. Rebecca Anne Hamilton, testified regarding her findings during her autopsy of the victim's body. Twilegar's trial counsel cross-examined her on the issues of the uncertainty of the time of death and the origin of the sand she discovered in the victim's laryngeal cavity. Accordingly, to the extent that Twilegar argued that counsel was ineffective for failing to cross-examine the medical examiner, his assertion is refuted by the record and was properly denied by the circuit court.

- 8 -

Twilegar additionally alleges that trial counsel was ineffective for failing to present an expert to refute the medical examiner's testimony. Relating to this claim, the circuit court found that trial counsel retained Dr. Spitz but did not call him to testify. McLoughlin testified at the evidentiary hearing that because the case against Twilegar was purely circumstantial, the defense strategy was to challenge everything. Specifically, McLoughlin sought to develop an alternate theory of the crime that drug dealers were responsible for Thomas's murder. McLoughlin testified that he provided Dr. Spitz with the same information provided to Dr. Haddix at postconviction but that Dr. Spitz did not provide any information that would have been helpful to the case and was therefore not called to testify. McLoughlin explained that the possibility of multiple gunshots and injuries were not consistent with the defense theory of the case, and may have been damaging if the jury thought that Thomas had been beaten and mutilated. Therefore, Twilegar has not demonstrated that counsel's trial strategy was unreasonable.

Secondly, Twilegar alleges that trial counsel was ineffective for failing to call David Twomey to testify regarding his alleged sighting of the victim after the established date of his disappearance. The circuit court properly denied this claim. First, this Court has already considered a version of this claim and rejected it on direct appeal. Specifically, this Court considered whether the trial court properly

excluded the testimony of Twomey that he had seen Thomas at a convenience store sometime prior to this murder and that Thomas had told Twomey to deny seeing him. This Court determined that the trial court did not err in finding that the evidence was not sufficiently relevant or probative. [2] Next, McLoughlin testified that he had concerns regarding Twomey's credibility because of his prior inconsistent statements and that he was under the influence when he arrived to testify. This was a reasonable strategic decision. See Bolin v. State, 41 So. 3d 151, 159-60 (Fla. 2010) (counsel is not ineffective for failing to present a witness with questionable credibility); Evans v. State, 995 So. 2d 933, 940-43 (Fla. 2008) (trial counsel's tactical decision not to present witnesses with questionable credibility does not constitute ineffective assistance); Lamarca v. State, 931 So. 2d 838, 848-49 (Fla. 2006) (finding it a reasonable trial strategy for counsel not to call people who were not credible and would not have made good defense witnesses); Marquard v. State, 850 So. 2d 417, 427 (Fla. 2002) (denying ineffective assistance claim for failing to call witness when counsel believed the witness would not exonerate the defendant).

---

2. We therefore find without merit Twilegar's allegation that trial counsel was deficient for failing to follow up on a motion in limine on which the trial court deferred ruling.

**Public Records**

Additionally, Twilegar alleges that section 119.19, Florida Statutes, and Florida Rule of Criminal Procedure 3.852 are facially unconstitutional and unconstitutional as applied to him because they prevent his access to public records to which he is otherwise entitled.[3]  Specifically, Twilegar alleges that the statute and rule are so stringent that they prevent any similarly situated inmate from ever being able to access constitutionally obtainable public records.  The circuit court denied Twilegar's public records claim, stating that it failed as a matter of law. The circuit court properly denied Twilegar's additional public records requests[4] and properly found meritless his claim regarding the constitutionality of the denial.

We have consistently held that a defendant bears the burden of demonstrating that the records sought relate to a colorable claim.  See Chavez v. State, 132 So. 3d 826, 829 (Fla. 2014); Mann v. State, 112 So. 3d 1158, 1163 (Fla. 2013); Valle v. State, 70 So. 3d 530, 549 (Fla. 2011).  Further, "the production of public records is not intended to be a 'procedure authorizing a fishing expedition

---

3. Twilegar's conviction and sentence of death were affirmed prior to July 1, 2013, and are therefore not governed by section 27.7081, Florida Statutes.  See Abdool v. Bondi, 141 So. 3d 529, 551 (Fla. 2014) (quoting ch. 2013-216, § 8, Laws of Fla.).

4. This issue concerns Twilegar's request for additional records, filed on April 21, 2011.  The agencies complied with Twilegar's initial request.

for records unrelated to a colorable claim for postconviction relief.' " Dennis v. State, 109 So. 3d 680, 699 (Fla. 2012) (quoting Diaz v. State, 945 So. 2d 1136, 1150 (Fla. 2006)). "Accordingly, where a defendant cannot demonstrate that he or she is entitled to relief on a claim or that records are relevant or may reasonably lead to the discovery of admissible evidence, the trial court may properly deny a public records request." Mann, 112 So. 3d at 1163.

Twilegar has failed to establish that he was denied access to records at all, much less that he was denied access to records that related to a colorable claim. Twilegar's allegation that the language of the rule as it applies to him fails to allege anything more than speculation that he could have been denied access to records since he was required to articulate a claim to which the records related. Because this Court has stated that a public records request is not intended to be a "fishing expedition" and because the purpose of the rule and statute is not to grant access to unrelated or protected documents, Twilegar's claim fails. Accordingly, the circuit court properly denied his request.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's denial of Twilegar's motion for postconviction relief.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Lee County,
    Mark Alan Steinbeck, Judge - Case No. 362003CF002151000AC

Neal Andre Dupree, Capital Collateral Regional Counsel-South, Suzanne Myers Keffer, Chief Assistant, Capital Collateral Regional Counsel-South, and Scott Gavin, Staff Attorney, Capital Collateral Regional Counsel-South, Fort Lauderdale, Florida,

        for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Katherine Maria Diamandis, Assistant Attorney General and Timothy Arthur Freeland, Assistant Attorney General, Tampa, Florida,

        for Appellee